25CA1214 Peo in Interest of Carr 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1214
Pueblo County District Court No. 24MH30035
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Michael Allen Carr,

Respondent-Appellant.

---

ORDER AFFIRMED

Division A
Opinion by JUSTICE MARTINEZ*
Román, C.J., and Hawthorne*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Respondent, Michael Allen Carr, appeals the district court's order authorizing the staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him involuntarily. Carr contends that his need for treatment was not sufficiently compelling to override his legitimate interest in refusing treatment. We affirm.

## I.    Background

¶ 2    Carr was committed to the hospital in April 2024 after being found incompetent to proceed in two criminal cases. This was Carr's fourth recent admission for mental health treatment, with two previous admissions to the hospital in 2019 and 2020, along with an admission to the Colorado Mental Health Hospital in Fort Logan in 2023. He was diagnosed with unspecified schizophrenia spectrum and other psychotic disorder and presented with symptoms including disorganized thinking, thought blocking, auditory hallucinations, delusional beliefs, and paranoia. Shortly after Carr's admission to the hospital, in May 2024, he became aggressive and threatening toward peers and was started on emergency medication. In June 2024, the district court granted the People's petition for the involuntary administration of various antipsychotic and mood stabilizing medications.

¶ 3    Over the course of the following six months, Carr remained psychotic and continued to lack insight into his mental illness, however, he was no longer a behavioral problem. He was diagnosed with schizoaffective disorder bipolar type. In December 2024, at the request of the hospital, the People requested a new involuntary treatment order. Following a hearing, the district court granted the People's petition, and a division of this court affirmed. *See People in Interest of Carr*, (Colo. App. No. 24CA2167, Feb. 20, 2025) (not published pursuant to C.A.R. 35(e)).

¶ 4    In June 2025, at the request of Dr. Elisabeth Cheney, Carr's psychiatrist at the hospital, the People petitioned the district court to review its prior involuntary treatment order. In particular, the People requested authorization to continue treatment with the only medication Carr was currently taking, olanzapine (Zyprexa).

¶ 5    The district court held an evidentiary hearing at which Dr. Cheney and Carr testified. Dr. Cheney described Carr's disorder and accompanying symptoms. She also described the requested medication, explained its possible side effects, and opined that it was necessary to treat Carr's symptoms.

¶ 6    Carr testified that he had a mental illness but was not willing to take the requested medication because he believed that his "coping skills" and "family support system" were sufficient to treat his symptoms. He also testified about the various side effects he has experienced including "jolting pains in [his] legs and arms" and weight gain.

¶ 7    The district court found that Dr. Cheney testified "credibly and persuasively." The court also found that the People had established all four elements for the involuntary administration of medication set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), and, accordingly, granted the petition and authorized the administration of Zyprexa to Carr against his will.

## II.    Legal Principles and Standard of Review

¶ 8    An involuntarily committed person retains the right to refuse treatment. *See id.* at 971. Even so, a court may authorize the involuntary administration of medication if the People prove the following elements by clear and convincing evidence:

> (1) the patient is incompetent to effectively participate in the treatment decision;

> (2) treatment by antipsychotic medication is necessary to prevent a significant and likely

long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient's causing serious harm to himself or others in the institution;

(3) a less intrusive treatment alternative is not available; and

(4) the patient's need for treatment by antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.

*Id.* at 973.

¶ 9    We determine whether the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. A physician's testimony alone may be sufficient to satisfy the *Medina* test. *Id.* at ¶ 30.

¶ 10    Applying the *Medina* test presents a mixed question of fact and law, meaning we defer to the district court's factual findings if supported by the record but review its legal conclusions de novo. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7. It is for the district court, as the fact finder, to determine witness credibility; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it. *Id.*

4

¶ 11    Carr concedes that the first three *Medina* elements were proven and only challenges whether the evidence was sufficient to prove the fourth *Medina* element.

¶ 12    In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

¶ 13    Carr specifically contends he has a bona fide and legitimate interest in avoiding serious side effects and his need for treatment is insufficient to overcome this interest.  Carr also argues that because Dr. Cheney "expects him to be discharged in the near future" and expects he "will cease taking Zyprexa once his is discharged," the need to treat him is "greatly diminished" due to the short-term nature of the treatment.

¶ 14    The district court expressly acknowledged Carr's legitimate concern about the harmful side effects he has experienced, including "weight gain" and "jolting pains." However, after weighing Carr's bona fide and legitimate interests against the state's interest in preserving his life and health and protecting the safety of those in the institution the court found that "the need for treatment is sufficiently compelling and overrides any bona fide and legitimate interest of [Carr's in] refusing the treatment." The record supports this determination.

¶ 15    Dr. Cheney opined that the failure to medicate Carr would be more harmful than the risks posed by the requested medication. In support of this opinion, Dr. Cheney testified that when Carr is "off medications" he is "quite dangerous." Dr. Cheney explained that when Carr first arrived at the hospital, "he was very paranoid, very thought disordered, [and] he couldn't make meaningful conversation." When staff would try to "redirect him," he "was combative" and "very guarded."

¶ 16    However, Dr. Cheney testified that since Carr has been on court-ordered medications, apart from "one breakthrough episode," his symptoms have improved. She explained that he "still has poor

insight" but "he's improved behaviorally and is very . . . manageable." Dr. Cheney also testified that she was able to get him off two other medications, so that he is currently only taking Zyprexa.

¶ 17     Dr. Cheney acknowledged that Zyprexa has some potential adverse side effects. But Dr. Cheney explained that they would monitor for any new side effects, and that additional medications were available to neutralize some of those side effects should they arise. Despite Carr's complaints of current side effects, Dr. Cheney testified that his need for Zyprexa outweighs those side effects and there is not another medication available that "would not have those side effects or worse."

¶ 18     As to Carr's complaint of weight gain, Dr. Cheney agreed that weight gain is "a common [side] effect" of Zyprexa and Carr "has had some weight gain" since his admission to the hospital. However, she explained that while his weight gain is "likely due to the sedentary lifestyle here," it was also "certainly possible" that Depakote, which he is no longer taking, "was a culprit in his initial weight gain." She said that while he gained seventy pounds by the time he came to her unit at the end of October 2025, as of January

2025, his weight had stabilized. She added that to help prevent weight gain, his treatment team has "encouraged him not to overeat" and "to exercise when he is able [and] to go to the recreation center."

¶ 19 Concerning Carr's complaint of "jolting pains" in his arms and legs, Dr. Cheney testified that she could not recall Carr complaining of arm and leg pain, but agreed that such complaints, while "less common," are "possible." For his part, Carr testified that the hospital staff gave him Tylenol every night to help with the pain, and that helps "[a] little bit." Dr. Cheney also testified that there are additional medications they could try to treat his arm and leg pain.

¶ 20 We disagree with Carr's assertion that the state's interest in treating him is "greatly diminished" by his pending release. Dr. Cheney testified that one of Carr's two criminal cases was dismissed, but not both. While she testified that she expected that his charges in the other case would be dismissed as well, she provided no assurance, nor could she, that this would in fact be the case. Further, based on our review of the record, the charges that were dismissed were less serious than those in the current pending

case. Accordingly, absent evidence of the dismissal of both of Carr's criminal cases along with a scheduled pending release date, the state's interests in preserving Carr's life and health and protecting the safety of those in the institution with him have not greatly diminished.

¶ 21     We do not doubt that Carr's concerns in avoiding harmful side effects are bona fide and legitimate. However, because the record supports the district court's findings, we conclude it did not err by finding that Carr's reasons for refusing the requested medication are overridden by his sufficiently compelling need for treatment. *See R.K.L.*, ¶¶ 13, 30.

## IV.   Disposition

¶ 22     The order is affirmed.

CHIEF JUDGE ROMÁN and JUDGE HAWTHORNE concur.